906 F.2d 200
 134 L.R.R.M. (BNA) 2841, 59 USLW 2136,
116 Lab.Cas. P 10,267
 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS LOCAL UNION
953, etc., et al., Plaintiffs-Appellants, Cross-Appellees,
v.
MAR-LEN OF LOUISIANA, INC., Defendant-Appellee, Cross-Appellant.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL
IRON WORKERS, LOCAL UNION NO. 678,
Plaintiff-Appellant, Cross-Appellee,
v.
MAR-LEN OF LOUISIANA, INC., Defendant-Appellee, Cross-Appellant.
 No. 89-4456.
 United States Court of Appeals,
Fifth Circuit.
 July 24, 1990.
 
 William Lurye, Jerry L. Gardner, Jr., Gardner, Robein & Urann, Metairie, La., for plaintiffs-appellants, cross-appellees.
 G. Michael Pharis, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendant-appellee, cross-appellant.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before GARZA, GARWOOD and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 In this section 301 action (29 U.S.C. Sec. 185(a)), which arises out of Mar-Len's repudiation of its pre-hire agreements with the unions, the question presented is whether the NLRB's interpretation of Sec. 8(f) of the National Labor Relations Act, 29 U.S.C. Sec. 158(f), announced in Deklewa v. International Association of Bridge Workers, Local No. 3, 282 N.L.R.B. 184 (1987), is the controlling law in this circuit and is to be applied retroactively in this case. Mar-Len and the unions appeal the district court's decision, which refused to apply Deklewa retroactively and held that, although, under the pre-Deklewa law, Mar-Len was precluded from unilaterally repudiating its pre-hire agreements because the unions had achieved majority status, the agreements nevertheless expired by their own terms. We conclude that Deklewa cannot be applied retroactively in this case and, because the district court erred in finding that the unions had achieved majority status at the time of Mar-Len's repudiation, we reverse.
 
 
 2
 The parties stipulated to the following facts. Mar-Len of Louisiana, Inc. ("Mar-Len") is a construction contractor. The International Association of Bridge, Structural, and Ornamental Iron Workers, Local Union No. 678 ("Iron Workers"), United Brotherhood of Carpenters and Joiners of America, Local Union 953 ("Carpenters"), and Construction and General Laborers, Local Union 207 ("Laborers") are labor unions. Mar-Len entered into pre-hire agreements with the Carpenters, on January 27, 1981; the Iron Workers on February 29, 1981; and the Laborers, on January 27, 1981, and August 5, 1981. These pre-hire agreements, styled "Assent Agreements," bound the parties to the terms of master collective bargaining agreements entered into between the unions and the Associated General Contractors, Inc.
 
 
 3
 Pursuant to a contract with the City of DeRidder, Louisiana, ("DeRidder"), Mar-Len commenced work on the DeRidder Phase Two Wastewater Improvements-Transfer Stations on April 15, 1983. On January 19, 1984, after a contract dispute with DeRidder, Mar-Len ceased work on the project as a result of the city's failure to pay.
 
 
 4
 On June 5, 1984, Mar-Len notified the unions that it repudiated any collective bargaining agreements that were in effect, asserting its right to do so pursuant to this court's holdings in Baton Rouge Building and Construction Trades Council, AFL-CIO v. E.C. Schafer Construction Co., Inc., 657 F.2d 806 (5th Cir.1981) and NLRB v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981). On July 12, 1984, Mar-Len similarly advised each of the union's fringe benefit funds that it had repudiated any agreements and refused to make any further contributions.
 
 
 5
 After Mar-Len resumed work on the project following a settlement with DeRidder on October 9, 1985, the unions formally grieved the company's failure to rehire the workers laid off in January 1984 and its failure to use the unions' hiring hall for rehire purposes. Mar-Len responded by denying the existence and/or validity of any collective bargaining agreement between the company and the unions. The Carpenters worked on the wastewater project through the week ending November 11, 1986; the Iron Workers, the week ending March 18, 1986; and the Laborers, the week ending November 25, 1986.
 
 
 6
 On March 10, 1986, the Carpenters and the Laborers instituted this action against Mar-Len, alleging that the company had unlawfully repudiated the collective bargaining agreements that covered work performed at the DeRidder wastewater facility. On April 28, 1986, the Iron Workers also filed suit against Mar-Len, asserting substantially the same allegations. Both actions, which were consolidated, were brought under section 301 of the Labor Management Relations Act and sought declaratory and monetary relief, including lost wages, benefits, and attorney's fees.
 
 
 7
 On November 17, 1988, the district court issued its opinion. After first determining that it had jurisdiction of the case under section 301, the court noted that the issue was whether, in repudiating the collective bargaining agreements with the unions, Mar-Len violated section 8(f), 29 U.S.C. Sec. 158(f).[1] The court then noted that at the time Mar-Len and the unions entered into their pre-hire agreements, the NLRB's interpretation of Sec. 8(f), which had been affirmed by the Supreme Court in NLRB v. Local Union No. 103, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978) (Higdon ), and followed by this court, see NLRB v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981); Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Co., Inc., 657 F.2d 806 (5th Cir.1981); Carpenters Local Union No. 1846 v. Pratt-Farnsworth, 690 F.2d 489 (5th Cir.1982) was that pre-hire agreements are unilaterally voidable unless and until the relevant union achieves majority status. The district court further noted, however, that the NLRB had later reversed itself in Deklewa v. International Association of Bridge Workers, Local No. 3, 282 NLRB 184 (1987), enforced 843 F.2d 770 (3rd Cir.1988), holding that pre-hire agreements may not be repudiated prior to expiration, except pursuant to a vote to decertify the union under Sec. 9(c) or 9(e). The district court concluded that Deklewa should be followed in this circuit but declined to apply it retroactively in the instant case. In support of this determination, the district court, citing Construction Industry Welfare Fund of Rockford, Illinois v. George M. Jones, 672 F.Supp. 291 (N.D.Ill.1987), noted that the policies Deklewa identified as underlying Sec. 8(f)--freedom of contract and promoting employee free choice and labor relations stability--would not be furthered by retroactive application under the circumstances of this case: that is, prohibiting Mar-Len from voiding its pre-hire agreements with the unions would serve to penalize the company for undertaking an act that, at the time it did so, it was legally permitted to do.
 
 
 8
 The district court next found, however, that when Mar-Len repudiated the pre-hire agreements on June 5, 1984, the unions had achieved majority status; therefore, it held that, under the pre-Deklewa rule, Mar-Len was precluded from unilaterally repudiating the pre-hire agreements. The court further held, however, that Mar-Len's letter to the unions on June 5, 1984, in which it denied the existence of a valid collective bargaining agreement and repudiated any agreement alleged to exist, caused the pre-hire agreements to expire by their own terms on the following dates: the Laborers, on April 30, 1985; the Carpenters, on May 1, 1985; and the Iron Workers, on April 30, 1986.
 
 
 9
 Finally, the district court declined to award the unions attorney's fees to the unions. It concluded that Mar-Len's repudiation of the pre-hire agreements was founded upon its reasonable belief that it had a right to do so.
 
 
 10
 The district court entered judgment for the unions on June 1, 1989. It awarded back pay and fringe benefits to two members of the Iron Workers. Yet, because the district court held that their pre-hire agreements terminated before Mar-Len resumed work on the DeRidder project, the Carpenters and the Laborers received no compensation. Mar-Len and the unions timely appealed.
 
 
 11
 The primary question before us is whether the NLRB's present interpretation of Sec. 8(f), announced in Deklewa, is the controlling law in this circuit and is to be applied retroactively in this case. We will assume for the purpose of this opinion that Deklewa is the controlling law in this circuit, see Deklewa, 843 F.2d 770 (3rd Cir.1988); NLRB v. W.L. Miller Co., 871 F.2d 745 (8th Cir.1989); Mesa Verde Construction Co. v. Northern California District Council of Laborers, 885 F.2d 594 (9th Cir.1989), on remand after 861 F.2d 1124 (9th Cir.1988) (en banc); NLRB v. Bufco Corp., 899 F.2d 608 (7th Cir.1990), but we need not decide the actual question because we hold that, in any event, Deklewa cannot be applied retroactively in this case.[2]
 
 
 12
 In deciding whether Deklewa is to be applied to this case, we look to the factors set out in Chevron v. Huson, 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) as relevant to the question of nonretroactivity: first, whether Deklewa establishes a new principle of law, either by overruling clear past precedent on which the parties may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; second, whether in the light of the prior history of Sec. 8(f), its purpose and effect, retroactive application of Deklewa furthers or retards its operation; and third, whether retrospective application would produce substantial inequitable results. See Phillips v. Marine Concrete Structures, Inc., 895 F.2d 1033, 1036 (5th Cir.1990). First, the nonvoidability of pre-hire agreements is a new rule insofar as it overrules past precedent on which Mar-Len clearly relied, as evidenced by its June 5, 1984 letters to the unions in which it specifically cited Baton Rouge Building and Construction Trades Council, AFL-CIO v. E.C. Schafer Construction Co., Inc., 657 F.2d 806 (5th Cir.1981) and NLRB v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981), in repudiating the pre-hire agreements. The turnabout on the part of the NLRB was not clearly foreshadowed by the Board's prior cases. Second, we are unable to conclude that retrospective application of Deklewa would further the operation of the Board's new interpretation of Sec. 8(f) because work on the job at issue is complete. Finally, with respect to the third Chevron factor, we conclude that retroactive application of Deklewa would produce "substantial inequitable results." This is true because, as we noted earlier, Mar-Len entered into its pre-hire agreements with the unions relying on its then-existing right to repudiate unilaterally the agreements so long as the unions had not achieved majority status. Furthermore, Mar-Len expressly relied on this established right when it unilaterally repudiated the agreements on June 5, 1984, prior to the Board's decision in Deklewa. Finally, because, as the unions conceded at oral argument, there is no evidence in the record that they had achieved majority status prior to repudiation,[3] we conclude that it would work inequitable and unjust results to apply Deklewa retroactively. We, therefore, hold that, even if we adopted Deklewa, we would not apply it retroactively so as to hold Mar-Len liable.[4] Therefore, although we agree with the district court that Deklewa should not be applied retroactively, there is no evidence to support the district court's holding that the unions ever achieved majority status. Thus, the district court's holding that Mar-Len was precluded from unilaterally repudiating the pre-hire agreements, and its judgment in favor of the unions must be reversed. We, therefore, reverse and remand for entry of a judgment of dismissal.
 
 
 13
 REVERSED and REMANDED for entry of judgment.
 
 
 
 [1]
 29 U.S.C. Sec. 158(f) provides, in relevant part:
 It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement ... Provided further, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.
 
 
 [2]
 To determine whether Deklewa is the controlling law in this circuit, we would have to examine an issue that has not been briefed or argued: whether we are bound by the precedent of prior panels in NLRB v. Haberman Construction Co., 641 F.2d 351 (5th Cir.1981); Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Co., Inc., 657 F.2d 806 (5th Cir.1981); and Carpenters Local Union No. 1846 v. Pratt-Farnsworth, 690 F.2d 489 (5th Cir.1982) that have expressly affirmed the NLRB's pre-Deklewa interpretation of Sec. 8(f). This analysis involves close, complex issues that we think should not be addressed in the absence of briefing and argument, see Mesa Verde Construction Co. v. Northern California District Council of Laborers, 861 F.2d 1124, 1134-1156 (9th Cir.1988) (en banc), especially when it is unnecessary to do so in order to resolve the case before us
 
 
 [3]
 Mar-Len argued that, at the time of repudiation, the unions had not achieved majority status because, as a result of Mar-Len's dispute with DeRidder, the contract had terminated and no employees were on the job site. In rejecting this argument, the district court held that Mar-Len's contract with DeRidder had only been interrupted, not terminated; because it assumed that the unions had achieved majority status prior to the cessation of work on January 9, 1984, it concluded that their majority status remained intact upon their return to work following Mar-Len's settlement with DeRidder on October 9, 1985. The district court, however, failed to explain why it assumed the unions had achieved majority status prior to the cessation of work. Nevertheless, as the unions concede, there is no evidence in the record to support this assumption
 
 
 [4]
 The other four circuits that have considered the retroactivity of Deklewa have split. The Third, Seventh, and Eighth circuits have applied Deklewa retroactively. See Deklewa, 843 F.2d 770 (3rd Cir.1988); NLRB v. Bufco, 899 F.2d 608 (7th Cir.1990); NLRB v. W.L. Miller Co., 871 F.2d 745 (8th Cir.1989). These courts concluded that retroactivity would work no "manifest injustice" because, at the time the respective employers repudiated the pre-hire agreement, the unions had achieved majority status; therefore, even under the pre-Deklewa rule, the employers would have been precluded from repudiating the agreements. A divided panel of the Ninth Circuit refused to apply Deklewa retroactively. Mesa Verde Construction Co., 885 F.2d at 597. Mesa Verde, like the instant case, involved a "strictly historical dispute." Id., quoting Nat. Automatic Sprinkler Industry Pension Fund v. American Automatic Fire Protection, 680 F.Supp. 731, 735 (D.1988). Therefore, the majority concluded retroactivity would not promote employee free choice because no decertification election could be held and would only serve to penalize the employer for exercising its right to repudiate