NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

Elmsford Sheet Metal Works,
Inc., Intervenor,

v.

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL
UNION NO. 38, Respondent.

No. 696, Docket 77–4196.

United States Court of Appeals,
Second Circuit.

Argued March 17, 1978.

Decided April 20, 1978.

Paul J. Spielberg, Deputy Asst. Gen. Counsel, and Edward S. Dorsey, Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, El-

liott Moore, Deputy Associate Gen. Counsel, Washington, D. C., of counsel), for petitioner.

Singer & Silverstein, White Plains, N. Y. (Alan D. Singer, New York City, of counsel), for intervenor.

Delson & Gordon, New York City (Jeffrey S. Dubin and Ralph P. Katz, New York City, of counsel), for respondent.

Robert J. Fenlon, Robert L. Bach, Felhaber, Larson, Fenlon & Vogt, Saint Paul, Minn., for Sheet Metal and Air Conditioning Contractors National Ass'n as amicus curiae.

Granik, Silverman, Sandberg & Nowicki, New City, N. Y. (David W. Silverman and Paul V. Nowicki, New City, N. Y., of counsel), for Sheet Metal and Roofers Employers Ass'n of Southeastern New York, Inc. as amicus curiae.

Donald W. Fisher, Toledo, Ohio (Mulholland, Hickey, Lyman, McCormick, Fisher & Hickey, Toledo, Ohio, of counsel), for Sheet Metal Workers' International Ass'n, AFL–CIO as amicus curiae.

Before GEWIN * and MULLIGAN, Circuit Judges, and POLLACK,** District Judge.

POLLACK, District Judge:

The National Labor Relations Board (Board) seeks enforcement of an order requiring Sheet Metal Workers International Association, Local Union No. 38 (the Local) to desist from unfair labor practices in connection with collective bargaining between the Local and Elmsford Sheet Metal Works (Elmsford). The Board found that the Local violated section 8(b)(3) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(b)(3), by its insistence on collective bargaining agreement provisions requiring Elmsford to contribute to two industry promotion funds. The Board also found that the Local violated sections 8(b)(1)(B) and 8(b)(3) of the Act, as amend-

ed, 29 U.S.C. § 158(b)(1)(B), –(b)(3), by its insistence on a provision for binding resolution of disputes concerning the terms of the subsequent collective bargaining agreement. *Sheet Metal Workers Local 38*, 231 N.L.R.B. No. 101 (1977). The application is granted for the reasons set forth below.

The parties waived a hearing before and proposed report of an Administrative Law Judge, and agreed to submit this controversy directly to the Board on stipulated facts and exhibits. In September, 1975 Elmsford and the Local entered into a collective bargaining agreement for the period through June 30, 1976. Article VIII, sections 12–13 of that agreement required Elmsford to make contributions to the Sheet Metal and Air Conditioning Contractors' National Industry Fund and the Sheet Metal Industry Fund of Westchester and Vicinity, to be used

"to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of employers, stabilize and improve Employer-Union relations, and promote, support, and improve the employment opportunities for employees."

Article X, section 8 established a procedure for resolving "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement." The section provided that if "the negotiations for renewal of this agreement become deadlocked in the opinion of" either party, that party could notify the international union and the Sheet Metal and Air Conditioners' National Association (SMACNA). If conciliation efforts by representatives of the international and SMACNA failed to produce an agreement, the controversy would be submitted to the National Joint Adjustment Board (NJAB), consisting of

* Honorable Walter P. Gewin, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

** Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation.

designees of the international and SMAC-NA. A unanimous decision of the NJAB would be binding. Strikes and lock-outs were barred unless and until the NJAB notified the parties that it was unable to reach a unanimous decision. Elmsford was not affiliated with SMACNA. We will refer to provisions such as Article VIII, sections 12–13 as industry fund provisions, and to provisions such as Article X, section 8 as interest arbitration provisions.[1]

On March 26, 1976 Elmsford requested renegotiation of the collective bargaining agreement, and in particular sought elimination of the industry fund and interest arbitration provisions. Elmsford met with the Local on May 11, June 7, August 30 and September 7, and on each occasion Elmsford sought elimination of these provisions from the new contract while the Local insisted on retaining them. At the September 7 meeting, the Local asserted that negotiations were deadlocked and announced that it would submit the controversy to the NJAB. It did so on September 10.

On September 23, Elmsford filed a Charge with the Board, asserting that the Local's insistence on industry fund and interest arbitration provisions violated sections 8(b)(1)(B) and 8(b)(3). The NJAB conducted a hearing on November 9, at which Elmsford did not appear. On November 11, the NJAB issued a decision directing Elmsford to execute a contract including the industry fund and interest arbitration provisions. Elmsford refused, and the Local wrote that as a result, they were "no longer in signed agreement." On November 29, the Local directed its members not to report to work at Elmsford on December 1. No work stoppage occurred, however. Elmsford and the Local signed a contract which omitted the disputed provisions, and agreed that those provisions would be added if the Board's Complaint against the Local were dismissed.

■ Section 8(b)(3), 29 U.S.C. § 158(b)(3), makes it an unfair labor practice for a labor organization to refuse to bargain collectively with an employer. Collective bargaining is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to *wages, hours, and other terms and conditions of employment*, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party . . . . .

29 U.S.C. § 158(d) (emphasis added). A party violates the duty to bargain collectively if it insists, as a precondition to reaching an agreement, on inclusion of a provision concerning a nonmandatory subject for bargaining, that is, a subject other than the mandatory issues of wages, hours, and other terms and conditions of employment. *NLRB v. Borg-Warner Corp.*, 356 U.S. 342, 348–49, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958).

■ Neither industry fund nor interest arbitration provisions are mandatory subjects for bargaining. An issue is mandatory only if it settles an aspect of the relationship between the employer and the employees. Further, it must have more than a speculative and insubstantial impact on that relationship. *Chemical Workers Local 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 178–82, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971).

■ The Local acknowledges that the purpose of the funds is to increase the prosperity of the sheet metal industry as a whole. Accordingly, the industry fund provisions concern the relationship between the employer and the public, not between the employer and its employees. The Local contends that the funds affect the terms and conditions of employment by increasing the number of jobs available to sheet metal workers. However, this impact on the terms and conditions of employment is too insubstantial. The argument proves too much, for it applies to every management decision with an effect on the prosperity of the business. We agree with the other courts which have held that contributions to

---

1. The provisions described above are set out in full as an appendix to the Board's decision.

industry promotion funds are not a mandatory subject for bargaining, *see NLRB v. Local 264, Laborers,* 529 F.2d 778, 786 (8th Cir. 1976); *NLRB v. Floor Decorators Local 2265,* 317 F.2d 269 (6th Cir. 1963).

■ The impact of interest arbitration on the relationship between the employer and the employees is also too speculative to qualify it as a mandatory subject. An interest arbitration clause determines the procedure by which wages, hours and terms and conditions of employment under a subsequent contract may be established, if the union and the employer cannot agree. However, it is impossible to predict what issues will be submitted to interest arbitration, or whether the panel will be able to reach a decision, or, above all, what it will decide. The question is governed by *Chemical Workers Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 180–82, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). There, the Court rejected the argument that the terms of pensions for already-retired employees were a mandatory subject due to an effect on active employees, in that representation by their successors would safeguard the pensions of the currently active employees after they retired.

■ Furthermore, whether or not a subject should be included within the scope of mandatory bargaining should be determined in light of national labor policy. *See Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 210–11, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). The Local's contention that a party is obliged to bargain concerning a demand that a subsequent collective bargaining agreement be determined by arbitration is inconsistent with the policy in favor of collective bargaining reflected in the National Labor Relations Act, 29 U.S.C. § 151. We hold that interest arbitration is not a mandatory subject for collective bargaining, in accord with every other court which has considered the issue, *see NLRB v. Massachusetts Nurses Association,* 557 F.2d 894, 897–98 (1st Cir. 1977); *NLRB v. Pressmen Union 319,* 549 F.2d 308 (4th Cir. 1977); *NLRB v. Pressmen Union 252,* 543 F.2d 1161, 1164–66 (5th Cir. 1976).

With respect to nonmandatory subjects, "each party is free to bargain or not to bargain, and to agree or not to agree." *NLRB v. Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958). What the Act prohibits is insistence on a nonmandatory subject to impasse, that is, making agreement on a nonmandatory subject a condition to any agreement. *Id.* at 349, 78 S.Ct. 718; *NLRB v. Operating Engineers, Local 542,* 532 F.2d 902, 907 (3d Cir. 1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977). A finding of impasse is peculiarly within the Board's expertise. *NLRB v. J. H. Bonck Co.,* 424 F.2d 634, 638 (5th Cir. 1970). Nonetheless, if the Local's invocation of interest arbitration in September, 1976 had been valid, we would be troubled by its contentions that negotiations did not break down over its insistence on the disputed terms, that it simply resorted to an agreed-upon procedure in furtherance of the negotiations with the intention of abiding by the outcome of that procedure, and that the breakdown did not occur until the employer refused to accept the NJAB's determination. *See Mechanical Contractors Association,* 202 N.L.R.B. 1 (1973). Indeed, if submission of the dispute to the NJAB had been a legitimate form of "negotiation of an agreement," the employer's refusal to execute a writing incorporating such an agreement would have been an unfair labor practice. 29 U.S.C. §§ 8(a)(5),–(d).

■ We do not confront this problem, however, because we hold that an interest arbitration provision of a collective bargaining agreement is void as contrary to public policy, insofar as it applies to nonmandatory subjects. The effect to be given to collective bargaining agreements is a matter of federal law, to be determined on the basis of national labor policy. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is an important element of national labor policy that a party need not bargain, and need not agree, concerning

nonmandatory issues. *See Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 220–21, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) (Stewart, *J.*, concurring); *NLRB v. Borg-Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958); *NLRB v. Pressmen Union 252*, 543 F.2d 1161, 1166 (5th Cir. 1976). The importance of preserving parties' freedom to exclude nonmandatory subjects from labor agreements is acknowledged by the rule that "[b]y once bargaining and agreeing on a permissive subject, the parties . . . do not make the subject a mandatory topic of future bargaining." *Chemical Workers Local 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 187, 92 S.Ct. 383, 402, 30 L.Ed.2d 341 (1971). Thus, as applied to nonmandatory subjects, an interest arbitration provision is contrary to national labor policy because it deprives the parties of their right to insist on excluding nonmandatory subjects from the collective bargaining agreement.

The Board previously has espoused the position we now adopt. *See NLRB v. Pressmen Union 252*, 543 F.2d 1161, 1169 (5th Cir. 1976). It is not clear whether any court has confronted this issue. The reported decisions enforcing interest arbitration clauses either involve mandatory subjects or do not indicate what matters were disputed. *See Office Employees Local 42 v. Local 174, UAW*, 524 F.2d 1316 (6th Cir. 1975) (per curiam) (issues not described); *Mailers Local 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305 (6th Cir. 1975) (issues not described); *Pressmen's Local 50 v. Newspaper Printing Corp.*, 518 F.2d 351 (6th Cir. 1975) (per curiam) (issues not described); *Pressmen Union 318 v. Piedmont Publishing Co.*, 393 F.2d 221 (4th Cir. 1968) ("manning" provision); *Division 892, Motor Coach Employees v. M. K. & O. Transit Lines, Inc.*, 210 F.Supp. 351 (N.D.Okl.1962), *rev'd on other grounds*, 319 F.2d 488 (10th Cir.), *cert. denied*, 375 U.S. 944, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963) (vacation time, holiday pay, wages, group insurance and other issues not described). A recent opinion of the United States Court of Appeals for the Fifth Circuit did not reach the question of the validity of interest arbitration clauses

as applied to nonmandatory subjects in general, but did hold such clauses invalid as applied to one of the nonmandatory issues involved in this case, to wit, renewal of the interest arbitration provision itself. *NLRB v. Pressmen Union 252, supra*, at 1169–71.

Since the interest arbitration provision was invalid as applied to the issues in dispute, Elmsford was entitled to refuse to appear before or accept the decision of the NJAB. Under these circumstances, there can be no doubt that an impasse was reached: as a result of the Local's insistence on the two disputed provisions the parties have not finalized their agreement to this day. Accordingly, the Board properly found that the Local violated section 8(b)(3) by its insistence on the industry fund and interest arbitration provisions.

We also agree with the Board that the Local's insistence on the interest arbitration provision violated section 8(b)(1)(B) of the Act, 29 U.S.C. § 158(b)(1)(B). That section makes it an unfair labor practice for a labor organization "to restrain or coerce . . . an employer in the selection of his representatives for the purpose of collective bargaining or the adjustment of grievances."

The Local argues that it did not "restrain or coerce" Elmsford. In light of our holding that the Local was not entitled to submit the dispute concerning the interest arbitration provision to the NJAB for a binding determination, we conclude that the Board's finding of restraint and coercion is supported by substantial evidence on the record considered as a whole, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477–91, 71 S.Ct. 456, 95 L.Ed. 456 (1951); 29 U.S.C. § 160(e). "For a union to refuse to bargain with a proper representative of an employer and yet threaten a strike if bargaining does not succeed is restraint or coercion in both the dictionary and the statutory sense." *NLRB v. Local 294, Teamsters*, 284 F.2d 893, 896 (2d Cir. 1960). Similarly, for the Local to refuse to reach an agreement unless it included an interest arbitration provision and yet threaten to strike if no agreement was reached constituted restraint and coercion.

The Local does not challenge the Board's finding that the interest arbitration provision affected Elmsford's choice of *representatives* for the purpose of collective bargaining, but some comment may be in order. The Board has had several occasions to consider whether various dispute-resolving bodies are made up of de facto representatives of the disputants. In *Plumbing and Pipe Fitting Local 525*, 135 N.L.R.B. 462 (1962), the Board adopted the trial examiner's conclusion that a Board of Arbitration consisting of designees of the union and of an employers association to which the employer in question did not belong, with provision for appointment of a neutral umpire to resolve deadlocks, constituted a situs for negotiation between the two sides rather than impartial adjudication, and that accordingly the employers association's designees were representatives of the employer, *id.* at 470. *Accord, Painters Council 36*, 155 N.L.R.B. 1013, 1017–18.

Yet, in *Local 103, Iron Workers*, 190 N.L.R.B. 741 (1971), *modified*, 465 F.2d 327 (7th Cir. 1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 689 (1973), the Board found that a National Joint Board for adjusting jurisdictional disputes, comprising an impartial chairman and an equal number of designees of the union and an employers association with which the employer in question was not affiliated, did not consist of representatives of the parties. The Board distinguished *Plumbing and Pipefitting Local 525*, 135 N.L.R.B. 462 (1962), on the ground that the Joint Board acted as an impartial arbitration panel rather than a situs for negotiations between partisans of the disputants. 190 N.L.R.B. at 741–2.

■ Thus, in determining whether a provision for submitting disputes to a third party constitutes a choice of representatives for purposes of section 8(b)(1)(B), the Board relies on a factual determination as to whether the dispute-resolving body acts in an impartial, adjudicative capacity or instead provides an occasion for negotiations on behalf of the respective parties. The Board was justified in concluding that the NJAB constitutes a situs for negotiations.

It consists exclusively of persons who would be expected to favor either the employer or the union. It is not required to reach a decision, and the necessity for unanimity in any decision which is reached assures that the outcome will reflect a bargained compromise. *See generally Mechanical Contractors Association*, 202 N.L.R.B. 1, 2 (1973).

Order enforced.