43 F.3d 1026
 148 L.R.R.M. (BNA) 2065, 129 Lab.Cas. P 11,263,
1995 Fed.App. 1P
 LOCAL 58, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
AFL-CIO, Plaintiff/Counter-Defendant/Appellant,
v.
SOUTHEASTERN MICHIGAN CHAPTER, NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION, INC.,
Defendant/Counter-Claimant/Appellee.
 No. 93-1687.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 9, 1994.
Decided Jan. 3, 1995.
 
 John G. Adam and Duane F. Ice (argued and briefed), Miller, Cohen, Martens & Ice, Southfield, MI, for plaintiff-appellant.
 Gary L. Lieber (briefed), Schmeltzer, Aptaker & Shepard, Washington, DC, for amicus curiae.
 Edward C. Cutlip, Jr. (argued and briefed), Kerr, Russell & Weber, Detroit, MI, for defendant-appellee.
 Before: BOGGS, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Plaintiff, Local 58, International Brotherhood of Electrical Workers, AFL-CIO ("Union") filed suit to vacate an interest arbitration decision[1] issued by the Council on Industrial Relations ("CIR"). The decision ordered defendant National Electrical Contractors Association, Inc. ("SEM/NECA") to execute a "material handlers" agreement with the Union. SEM/NECA, a construction trade association composed of electrical contractors, counterclaimed for enforcement of the decision.
 
 
 2
 The district court awarded summary judgment to SEM/NECA, and the Union appeals. The Union argues that the district court erred in affirming the arbitration award because the CIR exceeded its authority under the collective bargaining agreement and because the award violates national labor policy and exceeds statutory limits.[2]
 
 
 3
 We believe that the parties' collective bargaining agreement and the Submission Form provided to the CIR, which designated the unresolved issues, authorized the CIR to order the parties to execute the material handlers agreement. We also find that the material handlers agreement comported with federal statutes and national labor policy except for the inclusion of an interest arbitration clause. Accordingly, we affirm in part, and remand for excision of that provision.
 
 I.
 
 4
 The parties' relationship is governed by a collective bargaining agreement referred to as the "Inside Agreement" because it covers "installation, maintenance, connecting, shifting and repairing of all wiring ... and other electrical equipment" inside buildings. Art. X, Sec. 1. The Inside Agreement, in effect from June 7, 1989 to May 31, 1992, established wage rates, benefits and other working conditions, and contained a mandatory interest arbitration clause. Art. I, Sec. 2(D) provides: "Unresolved issues in negotiations that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations, may be submitted jointly or unilaterally by the parties to this Agreement to the Council for adjudication prior to the anniversary date of the Agreement." Pursuant to this clause, the parties agreed to forgo the use of strike or lockout at the termination of the contract in exchange for arbitration over the terms of a successor contract, which would be in effect from June 1, 1992 to May 31, 1995.
 
 
 5
 Prior to the expiration of the existing contract, SEM/NECA informed the Union, in accordance with the Inside Agreement, that it wanted certain changes in the new contract, including the establishment of a "material handlers" classification. A material handler aids foremen and journeymen electricians by moving materials and tools from place to place on a job site. The aim of SEM/NECA's proposal was lower composite crew costs, achieved by paying lower hourly rates than apprentices or journeymen received for performing these unskilled tasks. The Union objected to the classification and claimed that its introduction would threaten the wages, benefits, working conditions and standard of living of its members. The Union demanded that all bargaining unit work should remain with the journeymen and apprentices regardless of the level of skill necessary to perform the tasks.
 
 
 6
 Because the parties never reached a consensus about the material handler classification and other proposed contract provisions, they submitted, in accordance with the interest arbitration clause, all unresolved issues to the CIR[3] on April 30, 1992, a month before the existing contract expired. SEM/NECA attached a proposal for a new material handler classification to its initial submission form. The Union objected to the creation of the classification, arguing that SEM/NECA's proposal effectively requested the CIR to write the entire agreement for the parties because the parties had not attempted to negotiate the clauses contained in SEM/NECA's proposal prior to its submission.
 
 
 7
 The CIR's first decision issued on May 20, 1992, resolved all issues presented with the exception of the material handlers agreement. The CIR instructed the parties to "continue negotiations for a material handler's agreement," [sic] and directed them to submit unresolved issues to the August 1992 CIR "if a settlement is not reached by July 20, 1992."
 
 
 8
 The Union never objected to this order, and the parties continued to negotiate. They met four times during June and July of 1992, but were unable to resolve their dispute. Because the parties failed to reach an agreement, they returned, as ordered, to the CIR. Their joint submission form, which indicates that the parties agree "to accept as final and binding the decision rendered by the Council," included the phrase "Material Handler Agreement" under the statement of issues. Both parties briefed and argued their positions before the CIR.
 
 
 9
 The CIR issued its second decision on August 12, 1992, and ordered the parties to sign an attached material handlers agreement. That agreement defined the scope of the work, wages, hours and benefits for material handlers, included a "recognition" clause for the Union, a zipper clause and a mandatory interest arbitration provision.
 
 II.
 
 10
 When parties agree to submit an issue of contract interpretation to an arbitrator, the court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc., 894 F.2d 862, 866 (6th Cir.1990) (citation omitted).
 
 
 11
 Here, the district court upheld the CIR's award, finding that the CIR did not exceed its authority given the language of the Inside Agreement and the Submission Form. The district court analyzed this issue under the framework articulated by the Supreme Court in United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987), that the CIR's award ordering the parties to execute a material handlers agreement "must draw its essence" from the Inside Agreement. Additionally, under Misco, an arbitration award that is contrary to public policy must not be enforced. Id. at 42, 108 S.Ct. at 373.
 
 
 12
 We find that this framework of analysis, formulated in the context of grievance arbitration, is applicable to interest arbitration with slight modification. Interest arbitration, unlike grievance arbitration, focuses on what the terms of a new agreement should be, rather than the meaning of the terms of the old agreement. Thus, the arbitrator is not acting as a judicial officer, construing the terms of an existing agreement and applying them to a particular set of facts. Rather, he is acting as a legislator, fashioning new contractual obligations. Consequently we recognize that even greater deference must be paid to the arbitrator's decision, once it is established that he had the authority to resolve the issue. Misco, 484 U.S. at 37-38, 108 S.Ct. at 370-71.
 
 
 13
 When we decide whether an award draws its essence from the agreement, we must first assess whether the arbitrator paid heed to the "plain and unambiguous provisions" of the collective bargaining agreement. Local 120, Int'l Molders & Allied Workers Union v. Brooks Foundry, Inc., 892 F.2d 1283, 1286 (6th Cir.1990)(citing Dobbs, Inc. v. Local No. 614, International Brotherhood of Teamsters, 813 F.2d 85, 86 (6th Cir.1987)). If an award "conflicts with express terms" of the agreement, "imposes additional requirements that are not expressly provided in the agreement," or "cannot be rationally derived from the terms of the agreement," we must find that it does not draw its essence from the agreement. Id. Conversely, an award draws its essence from a collective bargaining agreement if it rationally may be inferred from the agreement. Manville Forest Products Corp. v. United Paperworkers Int'l Union, AFL-CIO, 831 F.2d 72, 74 (5th Cir.1987). Our review is not complete, however, merely because an award survives a contractual analysis. We must also review the award in light of federal statutes. An award "repugnant to the NLRA will not be enforced." International Org. of Masters, Mates & Pilots v. Trinidad Corp., 803 F.2d 69, 72 (2d Cir.1986).
 
 III.
 
 14
 The Inside Agreement limited the CIR's authority to resolving proposed "changes" to that agreement. Art. I, Sec. 2(A) of the Agreement states that "[e]ither party desiring to change or terminate this Agreement must notify the other in writing...." The "nature of the changes desired" also has to be specified in writing. Art. I, Sec. 2(B). Until the parties reach a conclusion as to the proposed changes, the existing provisions of the Agreement continue. Art. I, Sec. 2(C).
 
 
 15
 The Union contends that the August 12, 1992 decision created a new bargaining unit through a separate agreement and, consequently, cannot be considered a "change" to the Inside Agreement. According to the Union, because the material handlers agreement does not incorporate the Inside Agreement or state that it is a side agreement or an amendment to the Inside Agreement, it establishes an entirely separate contractual relationship. In support of its argument, the Union points out that under the CIR's second decision, the material handlers are obliged to resort to mandatory interest arbitration, whereas the electricians and apprentices will have the right to strike upon expiration of the 1992-95 Inside Agreement.
 
 
 16
 We find that the Inside Agreement contains no clear prohibition as to the creation of a material handlers agreement. The word "change" need not be read as narrowly as the Union advocates. According to Webster's Third New International Dictionary, change means "to make different in some particular but short of conversion into something else." We find the introduction of a material handlers classification meets this definition. The job tasks covered by the old Inside Agreement include those contained in the material handlers agreement. The differences involve wages, benefits and the title of the worker who performs these tasks. These changes do not convert the collective bargaining agreement between the parties into something else. Accordingly, we find that the CIR's decision is rationally derived from the terms of the Inside Agreement and comports with the Misco mandate.
 
 
 17
 In addition to the language itself, the negotiating history of the parties supports the CIR's authority to issue this award. The parties jointly submitted the issue to the CIR. Neither party objected to the CIR's first decision, which established the framework for resolution of the material handlers issue. The procedure by which the CIR announced its decision, a separate agreement rather than a provision in the Inside Agreement, reflects the CIR's confidence that the parties would resolve the dispute themselves, once they had sufficient opportunity to negotiate; and the CIR's recognition that its role was to resolve issues only after unsuccessful negotiation. Further, we find no authority to support the Union's contention that the creation of a new classification must be contained in the renegotiated Inside Agreement. See, e.g., Kozera, 909 F.2d at 53 (leaving issue of wage rate modification for residential work open for further negotiation by parties). Accordingly, we find that the parties' conduct fails to demonstrate that the CIR's decision exceeded the boundaries established by the parties and memorialized in the Inside Agreement.
 
 
 18
 Our deference to the CIR's decision is unaffected by the Union's contention that the second CIR decision was void because it was issued after the new Inside Agreement went into effect and the newly effective Inside Agreement contained no mandatory interest arbitration clause. At no time did the CIR relinquish authority to resolve this dispute. Furthermore, case law supports the survival of the interest arbitration clause beyond the expiration of the collective bargaining agreement. Sheet Metal Workers Int'l Ass'n, Local 110 Pension Trust Fund v. Dane Sheet Metal, 932 F.2d 578 (6th Cir.1991)(holding interest arbitration in prehire labor agreement survived expiration of prehire agreement). Here, the interest arbitration clause had to survive for the CIR to resolve all of the issues presented for arbitration. The timing of the second submission to the CIR comported with the CIR's direction and therefore it is inconsequential that the second submission occurred after the expiration of the Inside Agreement.
 
 
 19
 Nor is our deference to the CIR's decision impacted by the inclusion of a zipper clause in the Inside Agreement and the material handlers agreement. Even if these provisions create some doubt about the coexistence of these two agreements, any doubt must be resolved in favor of arbitrability. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).
 
 
 20
 Accordingly, the Union's narrow reading of the Inside Agreement disregards the broad standard under which we review this claim. If the CIR "arguably" construed the contract and "arguably" acted within the scope of its authority, we must uphold the decision. It has, and we do. Accordingly, we turn our attention to statutory limitations.
 
 IV.
 
 21
 In addition to its contractual arguments, the Union contends that the material handlers agreement is unenforceable for statutory reasons. In NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958), the Supreme Court held that the duty to bargain in good faith is limited to the subject of wages, hours, terms and conditions of employment. Neither party is required to bargain on other matters. Id. at 349, 78 S.Ct. at 722. See also 29 U.S.C. Sec. 158(d). Thus, bargaining over mandatory subjects cannot be conditioned on a party's acquiescence to a nonmandatory subject of bargaining. Borg-Warner, 356 U.S. at 349, 78 S.Ct. at 722.
 
 
 22
 Here, the Union contends that the CIR's decision improperly included two nonmandatory subjects of bargaining, interest arbitration, Hotel & Restaurant Employees, & Bartenders Union, Local 703 v. Williams, 752 F.2d 1476, 1479 (9th Cir.1985)(holding an interest arbitration clause is a nonmandatory subject of bargaining and cannot be included over a party's objection in a collective bargaining agreement resulting from interest arbitration), and the scope of the unit. Boise Cascade Corp. v. NLRB, 860 F.2d 471, 474 (D.C.Cir.1988)(holding scope of the employees' bargaining unit is not a mandatory subject of bargaining). We agree that the interest arbitration provision in the material handlers agreement must be severed, but disagree that the agreement changed the scope of the bargaining unit. A discussion of each issue follows.
 
 A.
 
 23
 Although interest arbitration of mandatory subjects is permissible, interest arbitration is not itself a mandatory subject of bargaining. IBEW, Local 135 (La Crosse Elec.), 271 NLRB 250, 251 (1984). Moreover, interest arbitration as to nonmandatory subjects is "void as contrary to public policy." NLRB v. Sheet Metal Workers Int'l Ass'n, Local Union No. 38, 575 F.2d 394 (2d Cir.1978). Consequently, the law is clear that an arbitrator may not use an interest arbitration clause as a means of self-perpetuation, and that this type of "second generation" interest arbitration clause cannot be included over another party's objection. Id. at 396.
 
 
 24
 The Union objected to the inclusion of standard CIR interest arbitration language in the renegotiated Inside Agreement. The Union's submission of the material handlers issue to interest arbitration in no way waives its right to protest the inclusion of an interest arbitration clause in that agreement. The Union has the right to bargain through its own representative and the inclusion of an interest arbitration clause resulting from interest arbitration is contrary to public policy.
 
 
 25
 Its inclusion is not fatal to the material handlers agreement, however, because the agreement contains a severability clause. Art. VI, Sec. 7.01 provides that any provision of the agreement declared illegal by a court of competent jurisdiction "shall immediately become null and void, leaving the remainder of the Agreement in full force and effect...." Accordingly, the interest arbitration provision in the material handlers agreement should be severed.
 
 B.
 
 26
 The resolution of the material handlers agreement's impact on the scope of the bargaining unit turns on the proper characterization of the facts. If the material handlers agreement alters the scope of the bargaining unit, as the Union claims, then the CIR contravened statutory authority by creating an agreement that includes a nonmandatory subject of bargaining through an interest arbitration award. Boise Cascade, 860 F.2d at 474; 29 U.S.C. Sec. 158(a)(5). If, on the other hand, the material handlers agreement affected work assignment or jurisdiction, two mandatory subjects of bargaining, the CIR was well within its authority in creating the agreement.
 
 
 27
 The scope of the unit determines "what employees the unit represents." Id., 860 F.2d at 474. In contrast, jurisdiction clauses encompass the "assignment of work to union members." Id., 860 F.2d at 474, n. 12 (citation omitted). Although the two concepts often are difficult to distinguish, we find that the material handlers agreement, on its face, addresses work assignment.
 
 
 28
 Although the Union presumes that the material handlers will not be included in the existing bargaining unit, that assumption is not supported by the facts. Here, the Inside Agreement does not define the bargaining unit by job title, i.e. limited to journeymen and apprentices; it defines the unit in terms of the work. Art. X, Sec. 3. Therefore, the work assigned to the material handlers was included in the previous Inside Agreement and was being performed by members of the unit. The material handlers agreement adds an additional classification of employees within the same bargaining unit. There is no basis for deciding that a regrouping of work tasks with an accompanying pay decrease impacts the scope of the bargaining unit. The language in the material handlers agreement recognized Local 58 as the exclusive bargaining representative. This is not a situation where an employer unilaterally removes a position from the bargaining unit or refused to bargain with the union. Under the material handlers agreement, the Union continues to represent journeymen and apprentices but some of the work they previously performed will be done for less money. Hence, it is a mandatory subject of bargaining, and therefore, the CIR had authorization to resolve this dispute pursuant to the interest arbitration clause contained in the Inside Agreement. San Antonio Portland Cement Co. v. United Cement, Lime & Gypsum Workers Int'l Union, 277 NLRB 338 (1985); Storer Communications, Inc. v. Local 666, Int'l Alliance of Theatrical Stage Employees and Moving Picture Machine Operators, 295 NLRB 72 (1989).
 
 C.
 
 29
 Finally, the Union contends that the CIR's decision is repugnant to the NLRA because it imposes a contract on a bargaining unit that never selected the Union as its bargaining representative in violation of Sec. 9(a) of the Wagner Act. 29 U.S.C. Sec. 159(a). The employer and union may not enter into an agreement when the union has not been selected as the exclusive bargaining representative. Int'l Ladies' Garment Workers Union v. NLRB, 366 U.S. 731, 737, 81 S.Ct. 1603, 1607, 6 L.Ed.2d 762 (1961).
 
 
 30
 As previously stated, it is not clear that the material handlers agreement creates a new bargaining unit. Many of the current members may continue to perform the tasks now governed by the material handlers agreement. They will just receive lower wages for the work. Moreover, under Sec. 8(f) of the NLRA, a prehire contract is permissible in the construction industry. 29 U.S.C. Sec. 158(f). A prehire agreement contract between the union and employer is signed prior to hiring, before any showing of union majority support. Jim McNeff, Inc. v. Todd, 461 U.S. 260, 266, 103 S.Ct. 1753, 1756-57, 75 L.Ed.2d 830 (1983). The material handler agreement qualifies for the Sec. 8(f) exemption.
 
 V.
 
 31
 Accordingly, we REMAND this matter to the district court for excision of the interest arbitration clause contained in the material handlers agreement. As to all other matters, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 An interest arbitration clause requires the parties to a collective bargaining agreement to submit any unresolved issues to an arbitrator for resolution when they cannot reach agreement on an issue during negotiation of a new contract. West Coast Sheet Metal, Inc. v. NLRB, 938 F.2d 1356, 1357 (D.C.Cir.1991)
 
 
 [2]
 The International Brotherhood of Electrical Workers Union, AFL-CIO and the National Contractors Association filed a joint amici curiae brief in opposition to the Union's position
 
 
 [3]
 The CIR is "a national arbitration body composed of an equal number of IBEW [International Brotherhood of Electrical Workers] and NECA representatives (and their local affiliates) that adjudicates local grievances and contract negotiation disputes throughout the electrical contracting industry." Kozera v. Westchester-Fairfield Chapter of Nat'l Elec. Contractors Ass'n, 909 F.2d 48, 50 (2d Cir.1990), cert. denied, 498 U.S. 1084, 111 S.Ct. 956, 112 L.Ed.2d 1044 (1991)