**GLOBE NEWSPAPER CO., Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS, Local 264, District 15, Defendant.**

Civil Action No. 08–cv–11945–DPW.

United States District Court, D. Massachusetts.

Aug. 5, 2009.

Eben A. Krim, Mark W. Batten, Proskauer Rose, LLP, Boston, MA, for Plaintiff.

Wayne A. Perkins, Law Office of Wayne A. Perkins, James O. Hall, Somerville, MA, for Defendant.

### MEMORANDUM AND ORDER

DOUGLAS P. WOODLOCK, District Judge.

Plaintiff Globe Newspaper Co. ("the Globe") brings this action to vacate a portion of an interest arbitration award ("the Award") rendered by Arbitrator Timothy Bornstein ("the Arbitrator") on October 31, 2008. The Award determined the terms of the collective bargaining agreement for 2005–2007 between the Globe and Defendant International Association of Machinists, Local 264, District 15 ("the Union"). According to the Globe, the Arbitrator exceeded his authority by including an interest arbitration provision in the new contract over the Globe's objection. The Union contends that inclusion of the interest arbitration provision was proper, and further argues that the Globe's refusal to recognize the Award as valid constitutes a violation of the parties' contractual agreements and federal law. Both parties have moved for judgment on the pleadings. For the reasons discussed below, I will deny the Union's motion and grant the Globe's motion.

## I. BACKGROUND [1]

### A. The 2005–2007 Collective Bargaining Agreement

In January 2005, the Globe and the Union began their most recent round of negotiations for a new collective bargain-

---

1. This factual discussion is drawn from the Globe's Petition to Vacate and the Union's Counterclaim. The parties agree that there are no genuine disputes as to material facts and that the case may properly be decided on the pleadings under Fed.R.Civ.P. 12(c).

ing agreement. In March 2006, having made little progress over eight bargaining sessions, the parties agreed to submit their dispute to interest arbitration under the terms of their previous collective bargaining agreement.[2] That agreement, which covered the years 1999–2004, included a provision which read: "Any disagreement relative to a succeeding contract which cannot be settled through negotiations or conciliation shall be arbitrated . . . ." The agreement also indicated that "[t]he decision of the Board of Arbitration or the Arbitrator shall be final and binding on both parties."

The parties stipulated to submit the following issue to the Arbitrator: "What should be the collective bargaining agreement between the parties for the years January 1, 2005—December 31, 2007?" Six hearings were held before the Arbitrator from December 5, 2006 through June 23, 2008. At the commencement of the arbitration, the Globe sought a downward departure from its previous wage pattern,[3] as well as a variety of other changes from the predecessor contract. According to the Globe, these changes were sought based on "its deteriorating financial position and that of the newspaper industry generally." However, at the fourth arbitration hearing, on December 3, 2007, the Globe withdrew its earlier proposals and agreed to be bound by the settled pattern of wages and almost all of the terms from the previous collective bargaining agreement. The Globe also indicated, for the first time, that it objected to including any provision in the new agreement which obligated the parties to submit future bargaining disputes to arbitration.[4] Prior to this, each of the collective bargaining agreements between the Globe and the Union for about the last fifty years had included provisions for interest arbitration.

The Globe reiterated its objection to the interest arbitration provision several times before the Arbitrator issued the Award. On April 4, 2008, the Globe sent a letter to the Arbitrator, elaborating on its opposition to the provision and citing case law in support of its position. At the fifth arbitration hearing, on April 14, 2008, the Globe asked for an interim ruling from the Arbitrator regarding inclusion of the interest arbitration provision. The Arbitrator denied the request. In its post-hearing brief, filed September 5, 2008, the Globe again urged the Arbitrator not to include the provision, arguing that because interest arbitration is a non-mandatory subject of bargaining under federal labor law, the provision could not be imposed by the Arbitrator over the Globe's objection.

2. "Interest arbitration, unlike grievance arbitration, focuses on what the terms of a new agreement should be, rather than the meaning of the terms of the old agreement. Thus, the arbitrator is not acting as a judicial officer, construing the terms of an existing agreement and applying them to a particular set of facts. Rather, he is acting as a legislator, fashioning new contractual obligations." *Local 58, IBEW v. Southeastern Mich. Chapter, Nat'l Elec. Contrs. Ass'n,* 43 F.3d 1026, 1030 (6th Cir.1995).

3. The Globe has typically engaged in "pattern bargaining" with its various unions. Under this negotiation method, the Globe reaches a lead wage settlement with one of the larger unions and then follows the "pattern" from that settlement with each of the other unions.

4. I note that the Union disputes some details of this account. The Union agrees that the Globe first requested removing the interest arbitration clause at the fourth arbitration hearing, December 3, 2007. According to the Union, however, it was not until the fifth arbitration hearing, April 14, 2008, that the Globe fully withdrew its earlier proposals and agreed to be bound by the settled wage pattern and the other terms from the predecessor collective bargaining agreement. I find the particulars of this sequence to be immaterial for purposes of the motions before me.

### B. The Arbitration Award

On October 31, 2008, the Arbitrator issued his Decision and Award, which determined the terms of the parties' 2005–2007 collective bargaining agreement. At the outset of his analysis, the Arbitrator noted: "In view of management's having dropped its proposals for concessions and its agreement to accept the current wage pattern, the only truly contested issue remaining is whether the parties' 2005–2007 contract should retain the clause requiring that future contract issues be submitted to interest arbitration in the event of a bargaining impasse." The Arbitrator noted that the Globe had not raised the issue of removing the provision during its earlier negotiations with the Union, and he found that the Globe's "belated challenge" was "fundamentally unfair" and "disruptive and inconsistent with the orderly conduct of labor negotiations and interest arbitration." On this basis, the Arbitrator concluded: "Absent a persuasive, substantive reason not to do so, I will include the parties' longstanding interest arbitration clause in their 2005–2007 contract."

## II. STANDARD OF REVIEW

### A. Motion for Judgment on the Pleadings

■ Fed.R.Civ.P. 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir.2008) (internal quotation omitted). A court may enter judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitle-

ment to a favorable judgment." *Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 54 (1st Cir.2006).

### B. Petition to Vacate an Arbitral Award

■ Under § 301 of the Labor Management Relations Act, federal courts may entertain "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Where a collective bargaining agreement includes an arbitration clause, the arbitration award is treated as a contractual obligation that can be enforced through a section 301 suit." *Local 2322, IBEW v. Verizon New Eng., Inc.,* 464 F.3d 93, 96 (1st Cir.2006). Under certain circumstances, a federal court may also vacate or modify an arbitration award that was issued pursuant to a collective bargaining agreement. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The court's review of an arbitrator's decision, however, is "extremely narrow and exceedingly deferential." *Ramos–Santiago v. UPS,* 524 F.3d 120, 123 (1st Cir.2008) (internal quotation omitted); *see also Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees,* 873 F.2d 425, 428 (1st Cir.1989) ("Judicial review of an arbitration award is among the narrowest known in the law."). That a reviewing court is convinced an arbitrator committed legal or factual error in his decision is not itself sufficient to justify setting aside an arbitral award. *See UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, Local 1445,* 527 F.3d 1, 5 (1st Cir.2008); *see also Challenger Caribbean Corp. v. Union Gen. de Trabajadores de P.R.,* 903 F.2d 857, 860 (1st Cir.1990) ("We do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award." (internal quotation omitted)).

■ Nevertheless, there are "a few exceptions to the general rule that the arbitrator has the last word." *Mercy Hosp., Inc. v. Mass. Nurses Ass'n*, 429 F.3d 338, 343 (1st Cir.2005). One such exception is that a court may vacate an arbitral award that is found to violate public policy. *See id.* (*citing W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). This exception "traces its roots to the common law doctrine that courts may refuse to enforce illegal contracts." *Id.* In order for an arbitral award to be vacated on this ground, "the award must violate an explicit well defined and dominant public policy, as ascertained by reference to laws and legal precedents." *Id.* (internal quotations and alterations omitted).

■ A federal court may also vacate an arbitral award "when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award was made in manifest disregard of the law." *JCI Commc'ns, Inc. v. IBEW, Local 103*, 324 F.3d 42, 48 (1st Cir.2003). For a challenger to demonstrate that an arbitrator acted with "manifest disregard of the law," he must show that the arbitration award was: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Ramos–Santiago*, 524 F.3d at 124. There must also be "some showing in the record, other than the result obtained, that the arbitrator[ ] knew the law and expressly disregarded it." *Id.* (*quoting Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir.1990)).[5]

## III. DISCUSSION

The only disputed aspect of the arbitration award in this case is the provision requiring the parties to submit future labor disputes to interest arbitration. The Globe contends that because interest arbitration is a non-mandatory subject of bargaining under federal labor law, the Arbitrator's decision to include the provision over the Globe's objection was both contrary to public policy and a manifest disregard of the law. The Union contends that interest arbitration is a mandatory subject of bargaining and otherwise argues that including the disputed provision was within the scope of the Arbitrator's authority. I find that interest arbitration is a non-mandatory bargaining subject and that the portion of the arbitral award which purports to include the disputed provision in

**5.** I note that the First Circuit has interpreted the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1401–04, 170 L.Ed.2d 254 (2008), to mean that "manifest disregard of the law" is no longer an independently valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act ("FAA"). *See Ramos–Santiago v. UPS*, 524 F.3d 120, 124 n. 3 (1st Cir. 2008). The instant case, however, does not arise under the FAA. While the FAA may be consulted for guidance in fashioning federal common law under § 301 of the Labor Management Relations Act, it does not apply of its own force to actions arising from arbitral decisions issued pursuant to collective bargaining agreements. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *see also* 9 U.S.C. § 1 (providing that the FAA does not apply to "contracts of employment of ... workers engaged in ... interstate commerce."). In *Ramos–Santiago*, the First Circuit expressly declined to decide whether *Hall Street* precludes a "manifest disregard of the law" inquiry in reviews of arbitral awards arising outside the FAA. 524 F.3d at 124 n. 3. Because I find that the arbitral award in this case is contrary to public policy, *see* Section III.C, *infra*, I need not determine whether *Hall Street* would preclude a "manifest disregard of the law" inquiry in the context of a § 301 proceeding.

the parties' new contract must be vacated as contrary to public policy.

## A. Mandatory or Permissive Subject of Bargaining

 There is clear First Circuit authority that interest arbitration is a permissive, non-mandatory subject of bargaining. Federal labor law draws a distinction between bargaining subjects that are mandatory or merely permissive. Section 8(d) of the National Labor Relations Act provides that "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment ...." 29 U.S.C. § 158(d). The First Circuit has explained:

> The duty to bargain collectively is thus limited to the subjects of "wages, hours, and other terms and conditions of employment." Within the area of those subjects neither party is legally obligated to yield. Outside the area of those subjects, however, the parties are free to bargain or not to bargain as they choose. The words of the statute are limiting, and define a limited category of issues subject to compulsory bargaining.

*NLRB v. Mass. Nurses Ass'n*, 557 F.2d 894, 897 (1st Cir.1977) (internal quotations and citations omitted). The First Circuit concluded that because "an interest arbitration provision bears only a remote relation, if any, to wages, hours or other terms or conditions of employment ... [it] is not a mandatory subject of bargaining." *Id.* at 898. Accordingly, while negotiating parties are free to include interest arbitration clauses in collective bargaining agreements

should they so desire, neither party may insist on the inclusion of an interest arbitration clause to the point of an impasse in labor negotiations. *See id.* at 899.[6]

## B. "Second Generation" Interest Arbitration

The disputed provision in this case is a so-called "second generation" interest arbitration provision, an issue which the First Circuit does not yet appear to have confronted directly. It is undisputed that the Globe and the Union were free to include interest arbitration provisions in their previous collective bargaining agreements, and that those provisions were binding on the parties. The question in the instant case is whether the Arbitrator had the authority to re-impose an interest arbitration provision in the new collective bargaining agreement over the Globe's objection.

It appears that every court to have considered this question has concluded that this type of second generation interest arbitration provision is unenforceable as contrary to public policy. In *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161 (5th Cir. 1976), for example, the Fifth Circuit held that "a contract arbitration clause cannot be enforced in an attempt to obtain such a clause in a new contract." *Id.* at 1169. The court explained that if the rule were otherwise,

> [t]he contract arbitration system could be self-perpetuating: a party, having once agreed to the provision, may find itself locked into that procedure for as long as the bargaining relationship endures. Exertion of economic force to

---

6. The only authority the Union has cited in support of its half-hearted argument that interest arbitration is a mandatory subject of bargaining is a dissent to a National Labor Relations Board ("NLRB") decision: *Columbus Printing Pressmen & Assistants' Union No.*

*252*, 219 N.L.R.B. 268, 275 (1975) (Chairman Murphy, dissenting). No matter how "well-reasoned"—and I do not find the dissent in *Columbus Printing* necessarily to be so—it is clearly inadequate authority to overcome contrary First Circuit case law directly on point.

rid oneself of the clause is foreclosed, for the continued inclusion of the term is for resolution by an outsider. Parties may justly fear that the tendency of arbitrators would be to continue including the clause, for that is exactly what happened in this case . . . .

[T]he perpetuation of contract arbitration clauses in successive contracts may well serve to increase industrial unrest . . . . [A] disappointed party can readily believe that the arbitrator lacked appreciation of its needs. . . . This is particularly the case where the disappointed party was opposed to having a contract arbitration clause in the bargaining agreement, but felt 'stuck with it' upon an arbitrator's award that the term be continued . . . . The likelihood that one party will feel aggrieved by a contract arbitration award increases as parties move from contract to contract.

*Id.* at 1169–70. Other Circuit Courts have reached similar holdings and echoed the Fifth Circuit's reasoning. *See, e.g., Local 58, IBEW v. Southeastern Mich. Chapter, Nat'l Elec. Contrs. Ass'n,* 43 F.3d 1026, 1032 (6th Cir.1995) ("[T]he law is clear that an arbitrator may not use an interest arbitration clause as a means of self-perpetuation, and that this type of 'second generation' interest arbitration clause cannot be included over another party's objection."); *Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc.,* 717 F.2d 456, 459 (8th Cir.1983) ("[A]n interest arbitration clause is unenforceable insofar as it applies to the inclusion of a similar clause in a new collective bargaining agreement.").

Several Circuit Courts have fashioned an even broader rule, prohibiting enforcement of arbitral awards insofar as they apply to *any* non-mandatory subjects of bargaining. According to the Second Circuit, "An interest arbitration clause is void as contrary to public policy to the extent that it applies to nonmandatory subjects of

bargaining, i.e., subjects other than wages, hours and other terms and conditions of employment; this includes the insertion of a successor interest arbitration clause in a new agreement." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38,* 288 F.3d 491, 505 (2d Cir.2002), *vacated* on other grounds at 538 U.S. 918, 123 S.Ct. 1572, 155 L.Ed.2d 308. In an earlier case, the Second Circuit explained the rationale behind this rule:

> The importance of preserving parties' freedom to exclude nonmandatory subjects from labor agreements is acknowledged by the rule that by once bargaining and agreeing on a permissive subject, the parties do not make the subject a mandatory topic of future bargaining. Thus, as applied to nonmandatory subjects, an interest arbitration provision is contrary to national labor policy because it deprives the parties of their right to insist on excluding nonmandatory subjects from the collective bargaining agreement.

*NLRB v. Sheet Metal Workers Int'l Ass'n, Local Union No. 38,* 575 F.2d 394, 399 (2d Cir.1978) (internal quotations, alterations and citations omitted). At least two other Circuit Courts have adopted this rule. *See Sheet Metal Workers, Local Union No. 24 v. Architectural Metal Works, Inc.,* 259 F.3d 418, 430 (6th Cir.2001) ("The law of the Sixth Circuit forbids including, in any arbitrator-fashioned labor contract legitimated by a contractual 'interest arbitration' clause, any contractual term which does *not* address a legally mandatory subject of collective bargaining, in the absence of the agreement of all parties." (emphasis in original)); *Hotel & Rest. Employees, Local 703 v. Williams,* 752 F.2d 1476, 1479 (9th Cir.1985) ("[A]rbitration can only be required for mandatory bargaining subjects, and an interest arbitration clause is a non-mandatory subject.").

Administrative Law Judges of the National Labor Relations Board ("NLRB") have also enforced a strict rule against interest arbitration awards that purport to resolve disputed non-mandatory bargaining subjects. In *Sheet Metal Workers' International Association, Local Union No. 263*, 272 N.L.R.B. 43 (1984), the Administrative Law Judge held that "while interest arbitration of mandatory subjects is permissible, although not itself a mandatory subject of bargaining, interest arbitration as to nonmandatory subjects 'is void as contrary to public policy.'" *Id.* at 45 (Rose, A.L.J.) (*quoting Sheet Metal Workers Int'l Ass'n, Local Union No. 38*, 575 F.2d at 398).[7] The Administrative Law Judge elaborated:

> [I]nterest arbitration is a nonmandatory subject of bargaining which even if agreed to, is unenforceable insofar as it purports to resolve the inclusion of an interest arbitration in a successor collective bargaining agreement. Parties may agree to arbitrate disputes arising during the course of negotiations but those agreements are binding and enforceable only to the extent that mandatory subjects are resolved. While the parties may arbitrate nonmandatory subjects, for such does not appear unlawful, either party may with impunity withdraw from the proceeding at any time.

*Id.* In *Connecticut State Conference Board, Amalgamated Transit Union*, 339 N.L.R.B. 760 (2003) (Biblowitz, A.L.J.), a different Administrative Law Judge concluded that "Board law precludes a party

from using an existing interest arbitration clause to perpetuate that clause." *Id.* at 767.[8]

### C. Vacating the Interest Arbitration Provision

■ I find the reasoning of the Circuit Court decisions and the NLRB Administrative Law Judges, discussed above, to be persuasive. Because interest arbitration is a non-mandatory subject of bargaining, it follows that national labor policy would be substantially impaired by permitting an arbitrator to impose an interest arbitration provision over the objection of either party. As the Second Circuit explained in *Sheet Metal Workers' International Association, Local Union No. 38*, a contrary rule would effectively erase the purpose of federal labor law's distinction between the core limited compulsory subjects of bargaining—such as wages and hours—and those permissive subjects about which parties may freely refuse to bargain at all. Given that federal labor law prohibits any party from insisting on interest arbitration to the point of impasse, it would be incongruous to allow an interest arbitration provision to be imposed against either party's will through an arbitrator's decision. The danger that arbitrators could, in theory, perpetually re-impose interest arbitration clauses in each successive contract renders the policy imperatives described here even more acute.

I also find the arguments raised by the Arbitrator and the Union in favor of including the disputed provision in the new

---

**7.** It should be noted that the NLRB panel reviewing the ALJ's decision affirmed but found it "unnecessary to rely on the [ALJ's] finding that the National Joint Adjustment Board acted beyond its authority when it ordered the parties to include in their successor collective bargaining agreement [the previous interest arbitration provision]." *Sheet Metal Workers' Int'l Ass'n, Local Union No. 263*, 272 N.L.R.B. 43, 43 n. 1 (1984) (3 member panel).

**8.** The Board panel in *Connecticut State Conference Board, Amalgamated Transit Union*, 339 NLRB 760 (2003) affirmed the ALJ's decision, although it modified language to the ALJ's recommended order "to include the customary affirmative bargaining language used to remedy an unlawful insistence on impasse on the inclusion of an interest arbitration clause...." *Id.* at 760 n. 1.

contract unpersuasive on their own terms. The Arbitrator in his decision expressly acknowledged that interest arbitration is a non-mandatory bargaining subject and that the "common view" of courts is to prohibit second generation interest arbitration provisions. The Arbitrator nevertheless identified two "unique circumstances" which he believed justified a different outcome in this case.

First, the Arbitrator noted that the Globe did not propose eliminating the interest arbitration provision during its initial negotiations with the Union, but instead raised the issue for the first time after arbitration was already underway. According to the Arbitrator, the "inexplicable delay has deprived [the Union] of the opportunity to seek *quid pro quos* for relinquishing interest arbitration." This overwrought contention overlooks a crucial fact. Because interest arbitration is a non-mandatory bargaining subject, the Globe would not have been obligated to make any *quid pro quo* concessions on this issue regardless of when it informed the Union of its position. It is well-settled that if any party to a labor contract refuses outright to bargain about interest arbitration, the other party is prohibited from insisting on including an interest arbitration provision to the point of impasse. *See Mass. Nurses Ass'n*, 557 F.2d at 899. Furthermore, even if the Arbitrator believed the Globe's timing was "fundamentally unfair," his power was confined by the terms of the parties' agreement and the governing legal principles; an arbitrator "does not sit to dispense his own brand of industrial justice." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

As an NLRB ALJ has explained, "[w]hile the parties may arbitrate nonmandatory subjects, for such does not appear unlawful, either party may with impunity withdraw from the proceeding *at any time*." *Sheet Metal Workers' Int'l Ass'n, Local Union No. 263*, 272 N.L.R.B. at 45 (Rose, A.L.J.) (emphasis added); but see Note 7, *supra*.

Second, the Arbitrator observed that the Globe "has not offered one substantive reason for abandoning this dispute resolution procedure." He added, "[The Globe] has not pointed to a single example in which an interest arbitrator has acted unfairly or issued an unjustified award." There is absolutely no authority, however, to suggest that parties to a labor contract are obligated to provide express reasons for refusing to bargain or arbitrate concerning a non-mandatory bargaining subject no matter how fair the arbitrator may otherwise have been.[9]

I am also unpersuaded by the Union's argument that the Globe somehow waived its right to object to the interest arbitration provision. The Union emphasizes that the parties initially submitted an entirely unconditional question to the Arbitrator: "What should be the collective bargaining agreement between the parties for the years January 1, 2005—December 31, 2007?" The Union contends that the Globe's subsequent and, according to the Arbitrator, "belated" objection to the disputed provision was insufficient to revoke the Arbitrator's "foundational authority" to include an interest arbitration provision in the new agreement. According to the Union, the Globe "implicitly recognized the authority of the Arbitrator" by continuing

**9.** It is also not determinative that the Arbitrator himself believed the arbitration provision to provide a fair and effective method of dispute resolution. As the Fifth Circuit noted, while warning of the dangers of self-perpetuating interest arbitration clauses, "[p]arties may justly fear that the tendency of arbitrators would be to continue including the clause." *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161, 1169 (5th Cir.1976).

to argue and present its case to him, rather than "simply walk[ing] away" from the bargaining table. The Union has not, however, provided any authority to support this "foundational authority" theory. Furthermore, the argument rests on a fundamentally flawed premise; the Globe was not at liberty simply to "walk away" from the negotiating table because many of the subjects that had been submitted to arbitration, such as the wage pattern for Union members, were undeniably mandatory subjects of bargaining.

## IV. CONCLUSION

For the reasons set forth more fully above, I find that including an interest arbitration provision in the parties' 2005–2007 collective bargaining agreement over the Globe's objection would be contrary to public policy.[10] Accordingly, I DENY the Union's motion and GRANT the Globe's motion for judgment on the pleadings, and I vacate that portion of the arbitration award which purports to include an interest arbitration clause in the parties' 2005–2007 contract.

---

**10.** As discussed in Note 5, *supra*, I find that it is unnecessary to resolve the question of whether the Supreme Court's *Hall Street* decision, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254, precludes a "manifest disregard of the law" inquiry under the circumstances of this case. If I were to conduct such an inquiry, I would find, for the same reasons discussed above, that the Arbitrator in this case did manifestly disregard the applicable law. It is clear from the Arbitrator's decision that he "knew the law and expressly disregarded it." *Ramos-Santiago*, 524 F.3d at 124. This would be an alternative basis upon which to vacate the disputed portion of the arbitrator's award.